Shirlee Fager BALDWIN, Plaintiff,

v.

LAUREL FORD LINCOLN–MERCURY, INC.; Ford Motor Credit Company; and A–Z Automotive Dealers, Defendants.

Civil Action No. 2:97CV245GR.

United States District Court,
S.D. Mississippi,
Southern Division.

May 28, 1998.

---

J. Andrew Phelps, Larry O. Norris, F. Marvin Morris, III, Anthony Sakalarios, Morris & Sakalarios, Hattiesburg, MS, for Shirlee Fager Baldwin.

Terry R. Levy, Eddie J. Abdeen, Daniel, Coker, Horton & Bell, Jackson, MS, for Laurel Ford-Lincoln Mercury, Inc.

Ross E. Henley, Henley, Lotterhos & Henley, Jackson, MS, Kristen Jones Indermark, Thomas M. Byrne, Sutherland, Asbill & Brennan, Atlanta, GA, for Ford Motor Credit Company.

## MEMORANDUM OPINION

GEX, District Judge.

This cause is before the Court on the motion to dismiss filed by the defendant, Ford Motor Credit Company [Ford Credit] [21–1], and the plaintiff's motion for leave to file a motion for partial summary judgment [33–1]. After due consideration of the evidence of record, the briefs of counsel, the applicable law, and being otherwise fully advised in the premises, the Court finds as follows:

### Statement of Facts

The plaintiff, Shirlee Fager Baldwin, filed this putative class against Laurel Ford Lincoln–Mercury, Inc. [Laurel Ford] and Ford Credit, in connection with a retail installment contract she executed with Laurel Ford for the purchase of a 1994 Ford Crown Victoria on or about January 27, 1994. The terms of the retail installment contract are summarized in part as follows:

| | |
|---|---|
| Cash Sale Price | $ 18,988.00 |
| (-) Down Payment | $ 1,963.78 |
| (=) Unpaid Balance | $ 17,024.22 |
| (+) Registration & Title | $ 5.00 |
| (+) Sales Taxes | $ 465.79 |
| (+) Extended Service Protection [ESP] | $ 975.00 |
| (+) Inspection | $ 5.00 |
| (=) Total Amount Financed | $ 18,475.01 |
| (+) Finance Charge (16% APR) | $ 8,661.19 |
| (=) monthly payments 60 × $452.2 | $ 27,136.20 |
| (+) Down Payment | $ 1,963.78 |
| (=) Total Sale Price | $ 29,099.98 |

The contract further provided that the dealer, Laurel Ford, was Baldwin's creditor in the installment purchase, and the contract also expressly assigned the contract to Ford Credit. In her amended complaint, Baldwin alleges, *inter alia*, that Laurel Ford asked her if it could arrange financing through Ford Credit and that it, in fact, did arrange such financing. Baldwin does not allege that she was charged an interest rate, finance charge, or any other fee different from that disclosed in the contract. Baldwin alleges that Ford Credit and Laurel Ford had a secret agreement whereby Ford Credit would pay Laurel Ford part of the interest charged in the contract as a commission. Additionally, Baldwin alleges that Laurel Ford secretly received between 40–60% of the $975 ESP charge she agreed to pay in the contract. Based on the above, Baldwin alleges the following state and federal claims: breach of fiduciary duties (count 1); breach of implied covenant of good faith and fair dealing (count 2); fraudulent misrepresentation and/or omission (count 3); negligent misrepresentation and/or omission (count 4); anti-trust violations (count 5); civil conspiracy (count 6); negligence (count 7); violations of the federal Truth–in–Lending Act [TILA], 15 U.S.C. §§ 1601, *et seq.*, and Regulation Z, 12 C.F.R. § 226.1, *et seq.* (count 8); and consumer fraud and deceptive business practices (count 9). Baldwin also seeks declaratory, injunctive, and equitable relief (count 10); punitive damages (count 11); and estoppel from pleading and tolling applicable statutes of limitations (count 12).

### Standard of Review

A complaint should not be dismissed under Rule 12(b)(6) " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.' " *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir.1997) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). " 'The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in [her] behalf, the complaint states any valid claim for relief.' " *Lowrey*, 117 F.3d at 247 (citing 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL

PRACTICE AND PROCEDURE § 1357, at p. 299 (1969)). In this case, the plaintiff bases her claims on the retail installment contract. In attacking the pleadings, Ford Credit may introduce the document without converting it to a motion for summary judgment. *See Sheppard v. Texas Dept. of Transp.*, 158 F.R.D. 592, 595–96 (E.D.Tex.1994) (citing 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1327, pp. 762–63 (2d ed. 1990) "[W]hen plaintiff fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading.").

## Legal Analysis

### I. Breach of Fiduciary Duties

■■■■ Baldwin alleges that Laurel Ford was acting as the agent of Ford Credit and thus owed her and the putative class members "a fiduciary duty to ... obtain the best possible financing ... and to obtain an extended warranty for the best possible price" and not to conceal the fact that Laurel Ford was retaining a portion of the ESP cost and finance as a commission. (Amend.Comp., ¶ 24). Under Mississippi law, "there is no presumption of a fiduciary relationship between a debtor and a creditor." *Peoples Bank & Trust Co. v. Cermack*, 658 So.2d 1352, 1358 (Miss.1995). To establish a fiduciary relationship between a debtor and creditor, the plaintiff must allege facts that demonstrate that (1) the activities of the parties have reciprocal benefit, (2) the activities impose a common interest and profit, (3) the parties repose trust in each other, and (4) one party has dominion and control over another. *Hopewell Enters., Inc. v. Trustmark Nat'l Bank*, 680 So.2d 812, 816–17 (Miss.1996) (citation omitted). In *Hopewell*, the Mississippi Supreme Court held that none of the above circumstances exist merely because the parties stand in a debtor-creditor relationship. *See id.* ("[t]his Court has never held that the relationship between a mortgagor and mortgagee is a fiduciary one"). The court relied in part on precedent holding that "generally the relationship between a debtor and creditor is a contractual one, and 'not a confidential or fiduciary one.'" *Id.* at 816 (citing *First Am. Nat. Bank of Iuka v. Mitchell*, 359 So.2d 1376, 1380 (Miss.1978), *overruled on other grounds*

by, *C & C Trucking Co. v. Smith*, 612 So.2d 1092 (Miss.1992)). The same result holds true when a consumer enters into a purchasing agreement pursuant to an ordinary retail automobile sale. *See, e.g, Blon v. Bank One, Akron, N.A.*, 35 Ohio St.3d 98, 519 N.E.2d 363, 367–68 (Ohio 1988) (rejecting plaintiff's argument that dealer acted as lender's agent).

The Court finds that the amended complaint alleges no facts that, if true, establish a fiduciary relationship between the defendants and Baldwin. The contract provided full disclosure of the amount she was required to pay for the vehicle, including financing, the extended warranty, and other costs. In considering whether to enter the contract, Baldwin was free to evaluate her bargain by appraising the total out-of-pocket expenditures required for the purchase. Baldwin's position allows her to vilify her lender merely because she has discovered that through greater diligence she might have obtained a better bargain from another lender. *See Blon*, 519 N.E.2d at 368. The connection between Laurel Ford and Ford Credit, standing alone, does not make the assignor-assignee relationship any different than a car dealer's ongoing relationship with a bank or credit union. *Id.* Further, the mere fact that Laurel Ford engaged in puffery or assisted in financing does not realign the defendants as fiduciaries acting on the behalf of their customers. As a consumer, Baldwin could not reasonably be expected to assume that the resulting deal would be "the best possible" arrangement without doing her homework. For the above reasons, the Court finds that Baldwin's claim that the defendants breached a fiduciary duty is subject to dismissal.

### II. Covenant of Good Faith and Fair Dealing

■■■■ Mississippi law recognizes an implied covenant of good faith and fair dealing in every contract. *See Cenac v. Murry*, 609 So.2d 1257, 1272 (Miss.1992). A party which acts in accordance with the express terms of a contract generally cannot be found to have violated the covenant of good faith and fair dealing. In this case, Baldwin agreed to pay

Laurel Ford or its assignee, Ford Credit, an interest rate of 16 per cent. Baldwin also expressly agreed to pay $975 for the ESP warranty. Although Baldwin alleges that she believed she would be receiving the best terms Ford Credit had for the interest rate and the ESP, such an expectation was unfounded. Ford Credit's act of purchasing Baldwin's contract from Laurel Ford on undisclosed terms or permitting Laurel Ford to retain a percentage of the ESP cost did not affect Baldwin's obligation or prevent her from obtaining the benefit of her bargain. The defendants were not required to do more than the contract required to escape liability for breach of the covenant of good faith and fair dealing. *See 4–County Elec. Power Ass'n v. Tennessee Valley Auth.,* 930 F.Supp. 1132 (S.D.Miss.1996) (defendant's conduct, consistent with terms of contract, did not subject it to liability even if the defendant did not disclose to the plaintiff the adverse consequences of terminating the contract). More importantly, the Court further finds that, at the time she negotiated the contractual terms with Laurel Ford, Ford Credit was only an assignee of that agreement and could not be liable for express or implied obligations under the contract. *Cf. Burley v. Homeowners Warranty Corp.,* 773 F.Supp. 844 (S.D.Miss.1990) ("the law in Mississippi does not impose a duty of good faith and fair dealing in the context of a first-party insurance contract; the duty is imposed upon an insurance company only when it is in the position of a liability insurer and is contractually obligated to defend its insured from suit' "), *aff'd,* 936 F.2d 569 (5th Cir.1991). The Court finds no authority for the proposition that under Mississippi law the defendants had a duty to provide Baldwin with the best terms available in order to comport with a duty of good faith and fair dealing. To the contrary, the implied covenant of good faith concerns the performance of the contract, not the negotiation of terms leading to the agreement. *See* RESTATEMENT (SECOND) OF CONTRACTS § 205 cmt. c. (1981); *Henkin v. Skane–Gripen A.B.,* 986 F.2d 1424, 1993 WL 36870, *7 (7th Cir.1993) (TABLE) (granting summary judgment for defendants where allegation that defendants breached duty of good faith and fair dealing were based only on negotiation process); *Atchison Casting Corp. v. Dofasco, Inc.,* 889 F.Supp. 1445, 1464

n. 13 (D.Kan.1995) ( [u]nder Kansas law, generally, there is no implied covenant of good faith and fair dealing in negotiations); *see also Cenac,* 609 So.2d at 1272 (following Restatement Second). Further, as set forth below, the Court finds no analogous duties arising under federal law. The Court therefore finds that this claim fails.

III. *Fraudulent Misrepresentation and/or Omission*

■ Baldwin similarly contends that the defendants engaged in fraudulent activity when they failed to disclose that (1) Laurel Ford was receiving a portion of the interest paid, (2) financing could be obtained at a cheaper rate if Baldwin dealt directly with Ford Credit, (3) how the financing would be procured and charged, (4) the additional interest paid back to Laurel Ford, and (5) the hidden commission retained by Laurel Ford for selling Baldwin the ESP warranty. (Amend.Compl., ¶ 40). As set forth above, Baldwin's out-of-pocket expenses were fully disclosed, thereby allowing her to evaluate her bargain. Baldwin's allegations of fraud and wrongdoing are grounded solely on her claim that under federal or state law the defendants were required to do more. As discussed in further detail in this Memorandum Opinion, the Court finds this position to be legally flawed. Because the defendants had no duty under Mississippi law to disclose the terms of the assignment or the division of proceeds Baldwin agreed to pay, the defendants' silence cannot be a basis for civil liability on a theory of fraudulent misrepresentation. *See Guastella v. Wardell,* 198 So.2d 227, 230 (Miss.1967); *McMahon v. McMahon,* 247 Miss. 822, 157 So.2d 494, 499 (Miss.1963); *see also Blon,* 519 N.E.2d at 367.

■ Baldwin's claim also fails in a more fundamental respect. Under Rule 9 of the Federal Rules of Civil Procedure, allegations of fraud must be pleaded with particularity. *See* FED.R.CIV.P. 9(b). "[N]o principle is more firmly settled or more familiar to the profession than that fraud will not be inferred or presumed, and cannot be charged in general terms, but that the specific and positive facts which constitute it must be

distinctly and definitely averred, and it must be shown that defendants participated therein." *McMahon*, 157 So.2d at 499 (citation and internal quotation omitted). "At a minimum, Rule 9(b) requires particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Tel–Phonic Servs., Inc., v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir.1992) (citation and internal quotation omitted). On the face of the complaint, the plaintiff fails to articulate with specificity facts that establish a claim of fraud, which requires a showing of the following: "(1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5)[her] intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7)[her] reliance on its truth, (8)[her] right to rely thereon, and (9)[her] consequent and proximate injury." *Rankin v. Brokman*, 502 So.2d 644, 646 (Miss.1987). (Citation omitted.)

Baldwin was furnished with the necessary information to evaluate the terms of her bargain. Baldwin was free to accept or reject such terms. She had no right to assume that she was getting the best deal possible or receiving the lowest rates charged by Ford Credit. Further, given the facts as alleged, Ford Credit did not have any direct dealings with Baldwin sufficient to establish any affirmative misrepresentation on its part. There was no duty to disclose the amount of commission paid back to Laurel Ford from the fund representing the interest or ESP charges itemized in the contract. *See Blon*, 519 N.E.2d at 368 (creditor has no duty to disclose to the consumer the existence and details of a finder's fee or similar arrangement with a credit arranger). The Court therefore finds that Baldwin's allegation of fraudulent concealment collapses.

IV. *Negligent Misrepresentation and/or Omission*

■ For similar reasons, the Court finds that Baldwin's allegation of negligent misrepresentation or omission fails. This claim requires the following elements: "[1] a misrepresentation or omission of fact; [2] materiality; [3] the failure to exercise ordi-

nary care; [4] reasonable reliance; and [5] injury." *Clark v. St. Dominic–Jackson Memorial Hosp.*, 660 So.2d 970, 974 (Miss.1995). (Citation omitted.) In *White v. Hancock Bank*, 477 So.2d 265, 268–70 (Miss.1985), the Mississippi Supreme Court held that, in the absence of assumption of confidential relationship or affirmative undertaking to act for depositor, a collecting bank is not liable for common-law negligence in failing to verify or establish collectibility of a check. *Id.* at 268–70. The court further held that, in such circumstances, the bank had no duty to take independent steps to check the validity and collectibility of a check issued to a depositor. *Id.* The defendants in this case had no duty to disclose to Baldwin facts regarding their relationship that might have led her to procure financing or warranty protection from another source. Because the charges as listed were properly disclosed in the contract, Baldwin, not the defendants, retained the duty to take independent steps to assure that she was getting the best terms possible. Moreover, Ford Credit is not similarly situated with the bank in *White*. Baldwin fails to allege facts that impose a duty on Ford Credit, an assignee, to reveal the terms set forth by Laurel Ford in its agreement. The Court further finds that Laurel Ford's efforts to provide financing through Ford Credit does not constitute an assumption by either defendant of Baldwin's principle duty to evaluate the terms of the installment contract against rates charged elsewhere or disclose the fact that she was not getting the best deal possible.

V. *TILA, 15 U.S.C. § 1601, et seq.*

A. *Statute of Limitations*

■ Baldwin alleges that the defendants violated the TILA, 15 U.S.C. § 1601, *et seq.*, and Regulation Z, 26 C.F.R. § 226.1, *et seq.* Claims arising under the TILA are subject to a one-year statute of limitations: "Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, *within one year from the date of the occurrence of the violation.*" 15 U.S.C. § 1640(e) (emphasis added). To the extent the statute operates as a grant of jurisdiction, the TILA claims in

this case based violations allegedly occurring in 1994, expired long before Baldwin filed her lawsuit. Although the Fifth Circuit has not decided the issue, the Sixth Circuit has held that the statute is jurisdictional in nature:

> The Truth in Lending Act creates a cause of action and confers jurisdiction on federal courts to hear cases arising under the statute. *That jurisdiction is defined and circumscribed by the Act itself, in a temporal as well as a substantive sense.* If a complaint is not filed within the time period prescribed by 15 U.S.C. § 1640(e), a federal court has no jurisdiction to entertain it.

*Rust v. Quality Car Corral, Inc.*, 614 F.2d 1118, 1119 (6th Cir.1980) (emphasis added); *see also Ramadan v. The Chase Manhattan Corp.*, 973 F.Supp. 456, 458–59 (D.N.J.1997) (following *Rust*). The legislative history of the statute suggests that it is jurisdictional and not subject to equitable tolling. In *Hardin v. City Title & Escrow Co.*, 797 F.2d 1037 (D.C.Cir.1986), the Circuit for the District of Columbia observed that, section 1640(e) was amended in 1980 to further provide as follows:

> This subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation *as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law . . .*

15 U.S.C. § 1640(e) (emphasis added). The court provides the following analysis:

> We can infer from this amendment that Congress recognized that the time limitation of § 1640(e) was jurisdictional. Were this time limitation an ordinary statute of limitations, it would have been unnecessary for Congress to amend the statute to specify that the defense of recoupment would survive the running of the time limitation. [R]ecoupment, being in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded, is never barred by the statute of limitations. . . . Stated in another way, the defense of recoupment may be asserted even though the claim as an independent cause of action is barred by limitations. 51 AM.JUR.2D Limitation of Actions § 77 (1970) (emphasis added). Thus,

by its 1980 amendment of § 1640(e), Congress gave the then existing statute the same jurisdictional interpretation as the Sixth Circuit did in *Rust.*

*Hardin*, 797 F.2d at 1040 n. 4.

■■■■ Baldwin contends that section 1640(e) is not jurisdictional and is subject to equitable tolling on a theory of fraudulent concealment. Baldwin does not, however, cite binding authority on the issue. "[J]urisdictional time limitations, unlike ordinary statutes of limitations, cannot be tolled merely because allegations of fraudulent concealment have been raised." *Ramadan*, 973 F.Supp. at 459 (citations omitted). Baldwin concedes that the Fifth Circuit has not decided the issue, but she cites *Moor v. Travelers Ins. Co.*, 784 F.2d 632 (5th Cir.1986), where the Fifth Circuit first rejected the plaintiff's meritless tolling argument without expressly deciding the issue of whether the statute permitted tolling. *Id.* at 633. More importantly, in omitting any reference to tolling as an exception to the TILA, the Fifth Circuit's subsequent analysis is illuminating:

> Nor may Moor avoid the statute of limitations under any of TILA's exceptions. He cannot revive a time-barred claim by characterizing his suit as a "defense to an illegal claim" under the recoupment theory provided by the statute. Under the express language of § 1640(e) a recoupment or set-off claim will be exempt from the one-year statute of limitations only when the debtor's claim is raised as a defense or a counterclaim to a creditor's "action to collect the debt."

*Id.* at 634 (footnote omitted). As noted in *Hardin*, the insertion by Congress of the recoupment defense demonstrates an intent to make the statute jurisdictional. *See Hardin*, 797 F.2d at 1040 n. 4.

Baldwin argues that because subsequent decisions in the Sixth Circuit have limited *Rust* narrowly to the issue of whether Federal Rule of Civil Procedure 6(a) should be read into section 1640(e). *See, e.g., Bartlik v. United States Dep't of Labor*, 62 F.3d 163, 166 (6th Cir.1995); *Jones v. TransOhio Savings Ass'n*, 747 F.2d 1037, 1041–42 (6th Cir. 1984) (finding that equitable estoppel applies to toll running of section 1640(e)). *Jones* was

soundly criticized by *Ramadan, supra*. As noted in *Ramadan*, the tensions between Rule 6(a) and section 1640(e) are based on *Rust*'s predicate holding that section 1640(e) is jurisdictional. *Ramadan, supra*, 973 F.Supp. at 459. *Bartlik, supra*, criticized *Rust*'s reading of Rule 6(a), but did not change its predicate holding. The result reached in *Rust*, which depends on its predicate holding, is still cited as good authority by the Sixth Circuit. *See, e.g., Allgood v. Elyria United Methodist Home*, 904 F.2d 373, 374–76 (6th Cir.1990) (decided after *Jones*).

More importantly, even if *Rust* has been overruled, the Court is not bound by Sixth Circuit law. *Jones'* reliance on the TILA's legislative history is based only on Congressional intent that the TILA is construed liberally in favor of the consumer. *Jones*, 747 F.2d at 1040. This broad purpose statement cannot be read to abrogate the more specific indications of Congressional intent embedded in the language of amended section 1640(e). *Cf. Kirby Corp. v. Pena*, 109 F.3d 258, 270 (5th Cir.1997) ("[i]t is a well known canon of statutory construction that a specific statutory provision governs the general"). The *Hardin* court's determination regarding section 1640(e) was specific to this statute's legislative history. The Court therefore holds that the one-year period indicated in section 1640(e) is jurisdictional and cannot be extended on theory of equitable tolling.[1]

■ Alternatively, assuming *arguendo* a theory of fraudulent concealment were available to equitably toll the running of section 1640(e), the Court finds that Baldwin is not entitled to equitable tolling. The Court finds, for reasons discussed below, that Ford Credit acted in good faith. Further, Baldwin does not allege facts that show she exercised the necessary diligence to ascertain the basis for her claims or that articulate with particularity the elements of fraudulent concealment. The Court is not persuaded that the alleged circumstances of this case show active concealment warranting the application of equitable tolling.

For the above reasons, the Court finds that Baldwin's TILA claims are subject to dismissal under section 1640(e).

## B. *The Merits*

■ In the alternative, in an abundance of caution, the Court addresses the merits of Baldwin's TILA claims. The Fifth Circuit provides the following:

> The purpose of the TILA is to protect the consumer from inaccurate and unfair credit practices, and "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601(a). "The TILA reflects a transition in congressional policy from a philosophy of 'Let the buyer beware' to one of 'Let the seller disclose.' By erecting a barrier between the seller and the prospective purchaser in the form of hard facts, Congress expressly sought 'to ... avoid the uninformed use of credit.'" *Mourning v. Family Publications Serv. Inc.*, 411 U.S. 356, 377, 93 S.Ct. 1652, 1664, 36 L.Ed.2d 318 (1973). To that end, Congress, through the Act, gave the Federal Reserve Board the "authority normally given to administrative agencies to promulgate regulations designed to 'carry out the purposes of the Act.'" *Mourning*, 411 U.S. at 365, 93 S.Ct. at 1659. The language of the Act's enabling provision also emphasized the Board's authority to prevent evasion of the rules. *Id.* at 371, 93 S.Ct. at 1661. Congress has, therefore, "delegated expansive authority to the Federal Reserve Board to elaborate and expand the legal framework governing commerce in credit." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559–60, 100 S.Ct. 790, 794, 63 L.Ed.2d 22 (1980).

*Fairley v. Turan–Foley Imports, Inc.*, 65 F.3d 475, 479 (5th Cir.1995). Pursuant to the grant of authority by Congress, the Board of Governors of the Federal Reserve System promulgated Regulation Z. *See* 12 C.F.R. § 226.1(a). As noted by the Fifth Circuit,

---

1. Accordingly, the Court rejects the more expansive reading of section 1640(e) adopted by the Ninth Circuit. *See King v. State of Cal.*, 784 F.2d 910 (9th Cir.1986).

Regulation Z sets out certain guidelines for creditors to follow when disclosing the amount financed, the finance charge, and the annual percentage rate to the consumer and demands that these disclosures be accurate. 12 C.F.R. §§ 226.18, 226.22.

To promote the Act's purpose of protecting consumers, our court has made clear that creditors must comply strictly with the mandates of the TILA and Regulation Z. Only adherence to the strict compliance standard will promote standardization of terms which will permit consumers readily to make meaningful comparisons of available credit alternatives. Strict compliance does not necessarily mean punctilious compliance if, with minor deviations from the language described in the Act, there is still a substantial, clear disclosure of the fact or information demanded by the applicable statute or regulation.

*Fairley,* 65 F.3d at 479 (citation omitted). The Fifth Circuit emphasized that, "[c]onsistent with its purpose, the statute is meant to be construed liberally in favor of the consumer." *Id.* at 479–80 (citation omitted). To recover under the TILA, actual injuries are not required. *Id.* "The remedial scheme of TILA is designed to deter generally illegalities which are only rarely uncovered and punished, and not just to compensate borrowers for their actual injuries in any particular case." *Id.* (citation and internal quotation omitted).

▪ To determine whether Baldwin has stated a claim under the TILA, the Court necessarily looks to Regulation Z and applicable state law governing the law of contracts, where appropriate. *Id.* The Fifth Circuit reasons as follows:

"Regulation Z obliges creditors to make the statutorily-mandated disclosures before the transaction is consummated." *Davis v. Werne,* 673 F.2d 866, 869 (5th Cir.1982) (internal quotation and footnote omitted). Consummation is defined under Regulation Z as "the time that a consumer becomes contractually obligated on a credit transaction." *Clark v. Troy and Nichols, Inc.,* 864 F.2d 1261, 1264 (5th Cir.1989); 12 C.F.R. § 226.2(a)(13). State law determines when a contractual obligation is created that binds the consumer to the credit terms. *Clark,* 864 F.2d at 1264; 12 C.F.R.

§ 226, Supp. 1, Official Staff Interpretations, Section 226.2(a)(13).

*Fairley,* 65 F.3d at 480.

Baldwin's claim is based on the disclosure requirements set forth by Regulation Z sections 226.17 and 226.18. Section 226.17(a) sets out the general rule that creditors must "make the disclosures required by this subpart clearly and conspicuously in writing...." 12 C.F.R. § 226.17(a)(1). Section 226.18, which regulates the content of such disclosures, states as follows in pertinent part:

For each transaction, the creditor shall disclose the following information as applicable:

. . . .

(c) Itemization of amount financed. (1) A separate written itemization of the amount financed, including

. . . .

(iii) *Any amounts paid to other persons by the creditor on the consumer's behalf. The creditor shall identify those persons.*

12 C.F.R. § 226.17(a)(1) (footnote omitted; emphasis added). The regulation is designed to track the following provision of the TILA:

**(a) Required disclosures by creditor**

For each consumer credit transaction other than under an open end credit plan, the creditor shall disclose each of the following items, to the extent applicable:

(1) The identity of the creditor required to make disclosure.

(2) . . .

(B) In conjunction with the disclosure of the amount financed, a creditor shall provide a statement of the consumer's right to obtain, upon a written request, a written itemization of the amount financed. The statement shall include spaces for a "yes" and "no" indication to be initialed by the consumer to indicate whether the consumer wants a written itemization of the amount financed. Upon receiving an affirmative indication, the creditor shall provide, at the time other disclosures are required to be furnished, a written itemization of the amount financed. For the purposes of this subparagraph, "itemization of the amount financed" means a dis-

closure of the following items, to the extent applicable:

> (I) the amount that is or will be paid directly to the consumer;
>
> (ii) the amount that is or will be credited to the consumer's account to discharge obligations owed to the creditor;
>
> (iii) *each amount that is or will be paid to third persons by the creditor on the consumer's behalf, together with an identification of or reference to the third person; and*
>
> (iv) the total amount of any charges described in the preceding subparagraph (A)(iii).

15 U.S.C. § 1638(a) (emphasis added).

▪ Baldwin alleges that Ford Credit violated the TILA by participating in a scheme whereby Laurel Ford would not disclose the amount of interest it retained pursuant to the assignment of the retail installment contract. For two reasons, this argument lacks merit. First, Ford Credit is not treated as a creditor under the act. *See* 15 U.S.C. § 1602(f)(4) (repealed). Prior to 1982, the term "creditor" included all parties to a transaction who regularly extended credit, thereby making each a creditor responsible for the TILA disclosures. *See, e.g, Ford Motor Credit Co. v. Cenance,* 452 U.S. 155, 101 S.Ct. 2239, 2240–41, 68 L.Ed.2d 744 (1981). In 1982, however, Congress revised the definition of "creditor" to simplify the TILA's disclosure requirements in the multiple creditor context. Consequently, only Laurel Ford was the "creditor." *See* 15 U.S.C. § 1602(f); *Kinzel v. Southview Chevrolet Co.,* 892 F.Supp. 1211, 1216 (D.Minn.1995). As an assignee, Ford Credit can only be liable if "the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement." 15 U.S.C. § 1641(a); *Brister v. All Star Chevrolet, Inc.,* 986 F.Supp. 1003, 1008–09 (E.D.La.1997). In this case, Baldwin alleges that Ford Credit entered into a scam assignment and knowingly permitted Laurel Ford to retain a portion of the interest and ESP charges. On these facts, although stated in conclusional terms, the Court finds that section 1641(a) arguably does not insulate Ford Credit from potential liability under the TILA.

▪ In any event, Baldwin's argument that Ford Credit violated the TILA when Laurel Ford did not disclose the amount of interest being retained lacks merit. The TILA requires the disclosure of a "finance charge" to borrowers, which is defined as the "sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. §§ 1605, 1631. The defendants were not required to disclose a dealer discount or the assignment of the loan agreement at less than its face value. *April v. Union Mortg. Co., Inc.,* 709 F.Supp. 809, 813 (N.D.Ill.1989); *Balentine v. Union Mortg. Co.,* 1994 WL 34256, *2 (N.D.Ill., Feb.2, 1994). Further, even if a "dealer discount" were a finance charge, the disclosure need only provide a statement showing the total "dollar amount the credit will cost you." 12 C.F.R. § 226.18; Official Staff Interpretation, 12 C.F.R. § 226.18(d) ("[t]he finance charge must be shown on the disclosures only as a total amount; the elements of the finance charge must not be itemized in the segregated disclosures...").

Similarly, Ford Credit contends that the TILA does not require disclosure of the retained portion of the ESP charge, provided that the full amount of the charge paid by Baldwin is accurately disclosed. In support thereof, Ford Credit cites the following official staff commentary of the Federal Reserve Board:

> Given the flexibility required in meeting the requirements of the amount financed itemization ... the creditor in such a case *may reflect that the creditor has retained a portion of the amount paid to others.* For example, the creditor could add to the category "amount paid to others" language such as "(we may be retaining a portion of this amount)."

Official Staff Commentary, 12 C.F.R. Pt. § 226.18(c)(1)(iii)(2) (Supp.I) (emphasis added). The discretionary language of the commentary leaves some uncertainty regarding what degree of disclosure is required. Ford Credit argues that the commentary does not require a creditor to disclose the amount of any retained portion of an optional service contract, but merely provides a creditor with options. Ford Credit further cites the Su-

preme Court's mandate that, "[u]nless demonstrably irrational, Federal Reserve Board staff opinions construing the Act or Regulation should be dispositive..." *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 565, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980).

Ford Credit concedes, however, that the Seventh Circuit in *Gibson v. Bob Watson Chevrolet–Geo, Inc.,* 112 F.3d 283 (7th Cir. 1997), takes a contrary view, holding that this interpretation is incongruous with the purpose of the section 1638(a):

> The only sensible reading of the commentary is as authorizing the dealer to disclose only the fact that he is retaining a portion of the charge, rather than the exact amount of the retention. Even this is a considerable stretch of the statute; and it is as far as, if not farther than, the statute will stretch.

*Id.* at 286. The Court disagrees that the Seventh Circuit's reading of the commentary is the only sensible one. In the very least, the Court finds that the commentary is not "demonstrably irrational." *Milhollin,* 444 U.S. at 565, 100 S.Ct. 790. A good faith interpretation of a regulation or a corresponding interpretative decision by staff members may insulate a creditor from liability:

> **(f) Good faith compliance with rule, regulation, or interpretation of Board or with interpretation or approval of duly authorized official or employee of Federal Reserve System**
>
> No provision of this section, section 1607(b) of this title, section 1607(c) of this title, section 1607(e) of this title, or section 1611 of this title imposing any liability shall apply to any act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof by the Board or in conformity with any interpre-

tation or approval by an official or employee of the Federal Reserve System duly authorized by the Board to issue such interpretations or approvals under such procedures as the Board may prescribe therefor, notwithstanding that after such act or omission has occurred, such rule, regulation, interpretation, or approval is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

15 U.S.C. § 1640(f).

In *Charles v. Krauss Co., Ltd.,* 572 F.2d 544 (5th Cir.1978), the Fifth Circuit applied this exception in the following situation:

> The defendant here *reasonably construed the exception in section 226.801 to include the contract* that it prepared for the plaintiff. *Our decision, following the Federal Reserve Board staff's understanding of section 226.801, limits the scope of that exception more narrowly and excludes the contract* in question here. But our decision which in effect limits the scope of the section 226.801 exception in order to preserve it amounts to a judicial determination that the exception's literal terms are invalid where read too broadly. The defendant, in relying on those literal terms, now has a good-faith defense under TILA section 1640(f) against this subsequent judicial determination.

*Id.* at 549 (emphasis added). One federal district court in this Circuit, following *Charles,* applied the TILA's good faith exception to absolve a dealer of liability. *See Brown v. Coleman Inves., Inc.,* 993 F.Supp. 439, 1998 WL 30645 (M.D.La.1998) (Polozola, J.).[2] As noted in *Brown,* other courts have taken a contrary position on the issue decided by the Seventh Circuit.[3] The *Brown* court agreed with the trial court cases following *Gibson.*[4] Nonetheless, finding that the

---

**2.** In *Brown,* the court addressed an automobile dealer's improper failure to disclose to buyers either the fact or amount of upcharges added to license fees.

**3.** *See, e.g., Taylor v. Quality Hyundai, Inc.,* 932 F.Supp. 218 (N.D.Ill.1996) (Norgle, J.); *El–Mohammed v. Old Orchard Chevrolet–Geo, Inc.,* 1997 WL 106243 (N.D.Ill.Feb.10, 1997) (Holderman, J.); *Johnson v. Rohr–Ville Motors, Inc.,* 1996 WL 447261 (N.D.Ill. Aug.2, 1996) (Holderman, J.); *Gibson v. Bob Watson Chevrolet–Geo, Inc.,* 1996

WL 316975 (N.D.Ill. June 10, 1996) (Gettleman, J.).

**4.** *See, e.g., Brister v. All Star Chevrolet, Inc.,* 986 F.Supp. 1003, 1007–08 (E.D.La.1997); *Ritter v. Durand Chevrolet, Inc.,* 932 F.Supp. 32 (D.Mass. 1996); *Cirone–Shadow v. Union Nissan of Waukegan,* 955 F.Supp. 938 (N.D.Ill.1997) (Kocoras, J.); *McPhan v. Geo R. Gibson Chevrolet,* 1996 WL 685449 (N.D.Ill. Nov.25, 1996) (Nordberg, J.); *Lindsey v. Ed Johnson Oldsmobile,* 1996 WL 411336 (N.D.Ill. July 19, 1996) (Kocoras, J.);

defendant acted in good faith, the court reasoned as follows:

> The Federal Reserve Board's interpretation of this statute and regulation is extremely vague and ambiguous. Many courts have agreed with Coleman Toyota's interpretation of the commentary holding that a creditor may, but is not required to, disclose the fact of or the amount of any upcharge included in amounts paid to others. A number of other courts have agreed with this Court holding that a creditor must disclose either the fact of or the amount of the upcharge included in amounts paid to others.
>
> In this case, Coleman Toyota did not merely fail to comply with the commentary due to its own honest, good faith mistake. Instead, Coleman Toyota complied in good faith with a reasonable interpretation of the commentary. Coleman Toyota also did not make a mistake in interpreting the commentary because Coleman Toyota's good faith interpretation was in agreement with the interpretation made by many other courts. It is true that Coleman Toyota failed to accurately forecast how this Court would interpret the commentary. Under § 1640(f) and the Fifth Circuit's opinion in Charles, however, *Coleman Toyota had no duty to forecast this Court's interpretation of the commentary and statute.* Therefore, the Court finds the "good faith conformity" defense must and should apply under the facts of this case. Therefore, the Court grants Coleman Toyota's motion for summary judgment on the issue of whether it inaccurately disclosed the "license fee" to the plaintiffs by failing to indicate the fact of or the amount of the upcharge.

*Brown*, 993 F.Supp. at 445–46 (emphasis added). In this case, the Court finds that Ford Credit's interpretation of the TILA and Regulation Z was taken in good faith. For the above reasons, the Court finds on this alternative basis that, because Ford Credit acted in good faith, it is not liable for the alleged TILA violations.

*Bambilla v. Evanston Nissan, Inc.*, 1996 WL 284954 (N.D.Ill. May 21, 1996) (Leinenweber,

## VI. *Remaining Claims*

Baldwin alleges an assortment of claims related to her retail installment contract, including a claim of consumer conspiracy, violations of the Sherman Anti–Trust Act, § 1, 15 U.S.C. § 1, consumer fraud, and deceptive business practices. For reasons set forth above, the Court finds that the remaining claims, which are predicated on the alleged but unfounded misconduct of the defendants, are subject to dismissal. *See, e.g., Greisz v. Household Bank (Illinois)*, 8 F.Supp. 1031, 1042–43 (N.D.Ill.1998).

## VII. *Motion for Leave to File Motion for Partial Summary Judgment*

Baldwin seeks leave of this Court to file a motion for partial summary judgment with regard to the issues in this cause. The Court finds, however, that because the claims are subject to dismissal under Rule 12(b)(6), Baldwin's motion for leave should be denied as moot. *See Board of Trustees of Trucking Employees of N. Jersey Welfare Fund v. Canny*, 876 F.Supp. 14, 17 (N.D.N.Y.1995).

### *Conclusion*

For the reasons set forth above, the Court finds that the motion to dismiss filed by Ford Credit [21–1] is well-taken and should be granted. The Court further finds that, because dismissal is warranted under Rule 12(b)(6), the plaintiff's motion for leave to file a motion for partial summary judgment [33–1] should be denied as moot. A final judgment in conformity with and incorporating by reference this Memorandum Opinion shall be entered this date. All parties shall bear their respective costs.

### *FINAL JUDGMENT*

This cause is before the Court on the motion to dismiss filed by the defendant, Ford Motor Credit Company [Ford Credit] [21–1], and the plaintiff's motion for leave to file a motion for partial summary judgment [33–1]. In accordance with the Court's Memorandum Opinion, issued this date and

J.).

incorporated herein by reference, it is hereby,

ORDERED AND ADJUDGED, that the defendant's motion to dismiss [21–1] be, and is hereby, granted. It is further,

ORDERED AND ADJUDGED, that the plaintiff's federal and pendent state claims be, and are hereby, dismissed with prejudice. It is further,

ORDERED AND ADJUDGED, the plaintiff's motion for leave to file a motion for partial summary judgment [33–1] be, and is hereby, denied as moot.

ORDERED AND ADJUDGED, that the parties bear their respective costs.