Christopher NOEL and Mary Noel, Sandra Curtis, on behalf of the Estate of Homer E. Curtis, Leno A. Jaxon and Molly A. Myers–Berman,[1] Plaintiffs,

v.

FLEET FINANCE, INC., Fleet Financial Group, Inc., Birmingham Bancorp Mortgage Corp., Express Mortgage Brokers, Inc., Sterling Mortgage & Investment Co. and John Doe Corporations 1 – 10, Defendants.

Frank Nixon, Jr., Plaintiff,

v.

Fleet Finance, Inc., Defendant,

Michael J. and Phyllis A. Garza, Plaintiffs,

v.

Fleet Financial Group, Inc., Defendant,

Nos. Civ.A. 95–73457, Civ.A. 96–73706 and Civ.A. 96–73506.

United States District Court, E.D. Michigan, Southern Division.

Aug. 20, 1998.

Order Clarifying Decision Aug. 31, 1998.

Order Denying Reconsideration Oct. 2, 1998.

---

**1.** On June 24, 1998, the Court entered an order dismissing the claims of the following Plaintiffs as to Defendants Fleet Finance, Inc. and Fleet Financial Group, Inc.: Christopher and Mary Noel, Sonny and Rose Gonzales, Leno Jaxon, Michael and Phyllis Garza, and Frank Nixon, (attachment 1) Plaintiffs filed a Motion for Reconsideration discussed, *infra* at 7.

Marilyn T. Mullane, Michigan Legal Services, Detroit, MI, Francis C. Flood, Kemp, Klein, Troy, MI, Jeffrey M. Weber, Michael J. Olcese, Weber & Olcese, Troy, MI, Norman S. Harrison, Saginaw, MI, James C. Steffl, Steffl & Flood, Troy, MI, for plaintiffs.

Donald S. Young, Zora E. Johnson, Dykema Gossett, Detroit, MI, Ann Marie Uetz, Detroit, MI, for Fleet Finance, Incorporated, defendant.

Donald S. Young, Zora E. Johnson, Ann Marie Uetz, Detroit, MI, for Fleet Financial Group, Incorporated, defendant.

Donald S. Young, Detroit, MI, for Fleet Bank, N.A., Fleet Bank of Maine, Fleet Bank of Massachusetts, Fleet Bank of New Hampshire, Fleet Bank of New York, Fleet National Bank, defendants.

John E. Jacobs, Jonathan B. Frank, Mason, Steinhardt, Southfield, MI, for Birmingham Bancorp Mortgage Corporation, Express Mortgage Brokers, Incorporated, Sterling Mortgage and Investment Company, defendants.

Jonathan B. Frank, Southfield, MI, for Homestead Mortgage Company, defendant.

Dan E. Bylenga, Jr., Rhoades, McKee, Grand Rapids, MI, for Schenk, Boncher and Prasher, respondent.

## ORDER

BORMAN, District Judge.

*(1) GRANTING SUMMARY JUDGMENT AS TO FEDERAL CLAIMS: COUNT 1—TRUTH IN LENDING ACT (TILA) 15 U.S.C. § 1601 et seq.; AND COUNTS 13 – 16—RACKETEERING INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) 18 U.S.C. § 1962;*

*(2) DISMISSING STATE LAW CLAIMS;*

*(3) DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION OF JUNE 24, 1998 ORDER*

The Court has before it (1) Defendants Birmingham Bancorp Mortgage Corporation (Birmingham), Express Mortgage, Inc. (Express) and Sterling Mortgage & Investment Co.'s (Sterling) Motion to Dismiss Second Amended Complaint; (2) Defendants Fleet Finance, Inc. (FFI) and Fleet Financial Group's (FFG) Motion for Partial Summary Judgment; and (3) Plaintiffs' Motion for Reconsideration of this Court's Order of June 24, 1998. The Court heard oral argument on July 6, 1998. At that time, the Court provided Plaintiffs with an opportunity to file a supplemental memorandum on the Federal Truth in Lending Act, (TILA) claim, 15 U.S.C. § 1601, *et seq.* Such a memorandum was filed on July 16, 1998. Defendants Birmingham, Express, and Sterling filed a response on July 29, 1998.

For the reasons stated below, the Court grants summary judgment as to all named Defendants on the federal claims, TILA (Count 1), RICO (Counts 13 – 16); dismisses Plaintiffs' state law claims; and denies Plaintiffs' Motion for Reconsideration of this Court's June 24, 1998 Order.

## I. Background

Plaintiffs Christopher and Mary Noel, Sandra B. Curtis, Leno A. Jaxon, and Molly A. Myers–Berman filed this class action styled case [2] on August 25, 1995 against Defendants FFI, FFG, Birmingham, Express and Sterling, and John Doe Corporations 1–10. The cases of *Garza v. Fleet Financial Group*, 96–73506 and *Nixon v. Fleet Finance, Inc.*, 96–73706 were consolidated with this case on March 27, 1998.

Plaintiffs claim that Defendants engaged in an unlawful lending scheme carried out in three separate phases—an origination phase, a servicing phase, and a profit-taking phase. The specific facts underlying Plaintiffs' claims, set forth in predecessor Judge Horace Gilmore's July 21, 1997 Opinion and Order Granting In Part and Denying In Part Defendants' Motion to Dismiss, will not be fully repeated here. *Noel v. Fleet Finance*, 971 F.Supp. 1102, 1104–1107 (E.D.Mich.

1997). In that July 21, 1997 Opinion and Order, Judge Gilmore granted in part and denied in part Defendants Birmingham, Express and Sterling's Motion to Dismiss. Specifically, Judge Gilmore ruled as follows:

In summary, as stated on the record and for the reasons stated from the bench:

(1) The Motion to Dismiss is GRANTED as to Count Three of the Amended Complaint. As such, Count Three, brought under the MCPA [Michigan Consumer Protection Act], is dismissed with prejudice as against the Movants [Birmingham, Express and Sterling].

(2) The Motion to Dismiss is GRANTED as to Count Five. As such, Count Five, the Plaintiffs' civil conspiracy claim, is dismissed without prejudice as against the Movants.

(3) The Motion to Dismiss is DENIED as to Count Nine, the Plaintiffs' breach of fiduciary duty claim.

(4) The Motion to Dismiss is GRANTED as to Count Ten. As such, Count Ten, the Plaintiffs' claim under the "shingle theory" of liability, is dismissed with prejudice as against the Movants.

(5) The Motion to Dismiss is GRANTED as to Counts Fourteen through Nineteen. Counts Fourteen through Nineteen, brought under RICO, are dismissed without prejudice as against the Movants.

(6) The Plaintiffs are permitted fourteen days from the date of this Memorandum Opinion and Order to file a Second Amended Complaint solely for the purpose of restating those Counts dismissed without prejudice from the bench.

(7) The Plaintiffs concede that they bring no cause of action against the Movants under Counts Six, Seven, and Twelve.

Furthermore, for the reasons set forth in this Memorandum Opinion and Order:

**2.** On July 3, 1996, Plaintiffs filed a Motion for Class Certification. This request was followed up in Plaintiffs' second amended complaint. The predecessor federal district judge, Hon. Horace Gilmore, dismissed the Motion for Class Certification without prejudice on October 14, 1997. To date, the motion has not been renewed.

(1) The Motion to Dismiss is GRANTED as to Count One, the Plaintiffs' claim under TILA. Specifically, Count One is dismissed (1) with prejudice as to Express and (ii) in part with prejudice and in part without prejudice as to Birmingham and Sterling.

(2) The Motion to Dismiss is DENIED as to Count Two, the Plaintiffs' claim arising under the Mortgage Act.

(3) The Motion to Dismiss is GRANTED IN PART and DENIED IN PART as to Count Four. Specifically, Count Four, the Plaintiffs' unjust enrichment claim, is dismissed with prejudice as against Birmingham and Sterling and denied as against Express.

(4) The Motion to Dismiss is GRANTED as to Count Eight. As such, Count Eight, the Plaintiffs' gross negligence claim, is dismissed with prejudice as against the Movants.

(5) The Motion to Dismiss is GRANTED as to Count Eleven. As such, Count Eleven, the Plaintiffs' unconscionability claim, is dismissed with prejudice as against the Movants.

(6) The Motion to Dismiss is DENIED as to Count Thirteen, the Plaintiffs' common law fraud claim.

*Noel v. Fleet Finance,* 971 F.Supp. at 1117.

On August 4, 1997, Plaintiffs filed a Second Amended Complaint, alleging the following claims:

Count 1— violation of Federal Truth in Lending Act (TILA);

Count 2— violation of Michigan Mortgage Brokers, Lenders and Servicers Licensing Act;

Count 3— Michigan Consumer Protection Act (MCPA);

Count 4— unjust enrichment;

Count 5— civil conspiracy;

Count 6— breach of contract;

Count 7— violations of Michigan Collection Practices Act;

Count 8— negligence;

Count 9— breach of fiduciary duty;

Count 10 —'shingle' theory of liability;

Count 11— unconscionability;

Count 12— common law fraud;

Court 13–16—violations of Federal Racketeer Influenced and Corrupt Organizations Act (RICO).

On August 5, 1997, Plaintiffs filed a Motion for Leave to File Third Amended Complaint. On August 25, 1997, Birmingham and Sterling moved to dismiss the Second Amended Complaint, and on September 17, 1997, FFG and FFI moved for partial summary judgment on the TILA claim, these are the two motions currently before this Court. On September 19, 1997, FFG and FFI filed a *Motion for Order of Payments into Escrow Account.*

On November 17, 1997, Judge Gilmore granted Plaintiffs' Motion for Reconsideration of his July 21, 1997 Opinion and Order as to Michigan Consumer Protection Act (Count 3) and reinstated that claim. The case was reassigned from Judge Gilmore to this Court on November 21, 1997. At a hearing on March 16, 1998, this Court denied the Motion of American Financial Services Association, Inc. for Leave to File Brief as Amicus Curiae in Support of Defendants FFG and FFI's Motion for Partial Summary Judgment. On March 27, 1998, this Court issued an Order granting Defendants FFG and FFI's Motion for Order of Payments into Escrow Account. On March 17, 1998, this Court granted in part and denied in part Plaintiff's Motion for Leave to File Third Amended Complaint and to Add Parties.[3] Plaintiffs' Motion for Reconsideration of that March 17, 1998 Order was denied on May 26, 1998.

On May 11, 1998, FFG and FFI filed a Motion to Dismiss certain Plaintiffs for their failure to comply with this Courts' March 27, 1998 Order Granting Motion for Order of Payments into Escrow Account. Plaintiffs did not respond to that Motion. On June 24, 1998, the Court granted Defendants' Motion, dismissing the following Plaintiffs as to FFG and FFI, for failure to comply with this Court's Order of March 27, 1998: Christo-

---

**3.** Plaintiffs have not filed any new pleadings in response to this Order.

pher and Mary Noel, Sonny and Rose Gonzales, Leno Jaxon, Michael and Phyllis Garza, and Frank Nixon. On July 2, 1998, Plaintiffs filed a Motion for Reconsideration of that Order.

■ The Court hereby DENIES Plaintiff's Motion for Reconsideration of the March 27, 1998 Order for the reasons stated in footnote 4.[4]

## II. Discussion

### A. *TILA Claim*

Judge Gilmore's July 21, 1997 Opinion and Order dismissed Plaintiffs' TILA claim (Count 1) as to Defendant Express, finding that it was not a 'creditor' under the statute. Judge Gilmore further found that Defendants Birmingham and Sterling were 'creditors' under the statute.

Judge Gilmore held that the yield spread premium was a 'finance charge,' which must be separately disclosed under TILA:

the Court finds that the yield spread premium meets both of the elements of the definition of a finance charge under TILA. As such, Birmingham and Sterling were required to disclose its existence to the Plaintiffs.

*Noel,* 971 F.Supp. at 1111. Judge Gilmore granted Plaintiffs leave to amend the complaint to allege that the yield spread premium was a 'finance charge' as opposed to a 'prepaid finance charge.' *Id.* at 1113.

Plaintiffs filed a Second Amended Complaint, alleging that FFG, FFI, Birmingham and Sterling violated the TILA and Federal Resource Board Regulation Z. Specifically, Plaintiffs alleged that FFI:

a. failed to clearly and accurately disclose the 'finance charge' in violation of 15 U.S.C. § 1638(a)(3) and 12 C.F.R. 226.4 and 226.18(d), and

b. failed to clearly and accurately disclose the 'annual percentage rate' using terms in violation of 15 U.S.C. § 1638(a)(4) and 12 C.F.R. 226.18(e).

Second Amended Complaint at ¶ 263(a) and (b). Plaintiffs also alleged that,

To the extent the Fleet Correspondents [Birmingham and Sterling] fraudulently concealed its incorrect disclosures from Plaintiffs, they too failed to make these required 'material' disclosures.

Second Amended Complaint at ¶ 264. Both FFI and FFG and Birmingham and Sterling, moved separately for the dismissal of Plaintiffs' amended TILA claim. Accordingly, while Judge Gilmore's opinion had provided Plaintiffs with the opportunity to file a Second Amended Complaint, the instant opinion is the first to directly address a motion by Defendants challenging Count 1 of the Second Amended Complaint.

### i. *Disclosure of Finance Charge*

Defendants note that the relevant federal statute and Federal Reserve regulations specifically require that the 'finance charge' defined as "the sum of all charges," 15 U.S.C. § 1605, be a single, unitemized number. The finance charge must be conspicuously disclosed. 15 U.S.C. § 1632. Title 15 U.S.C. § 1638 provides in relevant part,

(a) for each consumer credit transaction other than under an open end credit plan, the creditor shall disclose each of the following items, to the extent applicable:

\* \* \* \* \* \*

(3) The "finance charge," *not itemized,* using the term.

15 U.S.C. § 1638 (emphasis added). The provision, 12 C.F.R. 226.18(d) of Regulation Z, as promulgated by the Federal Reserve Board pursuant to the TILA, requires disclosure of:

---

**4.** Plaintiffs have not shown a palpable defect by which the Court and the parties have been misled and that a different disposition of the case must result from a correction thereof. *See* LR 7.1(h)(3). Plaintiffs' counsel's argument in support of the motion is that they never received a copy of Defendants FFI and FFG's Motion to Dismiss. Filings with this Court indicate a proof of service sent to the address provided to the court by counsel for Plaintiffs. Apart from that argument, and more to the point, the Court notes that Plaintiffs' assertions do not change the fact that Plaintiffs failed to deposit monthly payments into a Court escrow account, in blatant disregard of this Court's March 27, 1998 Order.

The "finance charge" using that term, and a brief description such as "the dollar amount the credit will cost you."

The Federal Reserve Board Commentary specifically advises,

> Fees paid by the funding party to a broker as a yield spread premium and already included in the finance charge as interest or as points should not be double counted.

61 FR 49238.

Defendants assert that since they acted in accordance with the requirements of TILA and Regulation Z, they should not be liable under any theory asserted in Count 1, under 15 U.S.C. § 1640(f), which provides in pertinent part that,

> No provision of this section ... imposing any liability shall apply to any act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof by the Board ...

15 U.S.C. § 1640(f).

Plaintiffs concede that the finance charge does not require itemization and can be reported as one lump charge. Plaintiffs also agree that the yield spread premium is part of the finance charge.[5] Plaintiffs contend, nevertheless, that there should be a separate disclosure so that the borrower is aware that a three point yield spread premium has been added to the underwritten finance charges.

### ii. *TILA Disclosure Statement*

Plaintiffs claim that Defendants' failure to disclose the yield spread premium along with the other types of loan fees, points, finder fees, etc., in the TILA Disclosure Statement or the RESPA[6] HUD-1 Settlement Statement deceived and misled the Plaintiff borrowers. Plaintiffs further assert that the purpose of TILA is to provide meaningful disclosure and that identifying the yield spread premium would provide such disclosure. Defendants argue that the Disclosure Statement was prepared in accordance with

TILA Regulation Z, 12 C.F.R. § 226.17(c)(1).[7]

In *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 568, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980), the Supreme Court discussed the concept of "meaningful disclosure," when considering whether TILA and its corresponding regulations required the disclosure of acceleration clauses:

> The Truth in Lending Act has the broad purpose of promoting 'the informed use of credit' by assuring 'meaningful disclosure of credit terms' to consumers. 15 U.S.C. § 1601. Because of their complexity and variety, however, credit transactions defy exhaustive regulation by a single statute. Congress therefore delegated expansive authority to the Federal Reserve Board to elaborate and expand the legal framework governing commerce in credit 15 U.S.C. § 1604; *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973). The Board executed its responsibility by promulgating Regulation Z, 12 CFR Part 226 (1979), which at least partly fills the statutory gaps. Even Regulation Z, however, cannot speak explicitly to every credit disclosure issue. At the threshold, therefore, interpretation of TILA and Regulation Z demands an examination of their express language; absent a clear expression, it becomes necessary to consider the implicit character of the statutory scheme.

*Id.* at 559, 100 S.Ct. 790. Thus, the Supreme Court recognizes that Congress delegated expansive authority to the Federal Reserve Board, which promulgated Regulation Z. In the instant case, this Court concludes that Regulation Z clearly encompasses the disclosure at issue.

This Court finds relevant a recent Mississippi Federal District Court case, *Baldwin v. Laurel Ford Lincoln Mercury, Inc., Ford Motor Credit, et al.*, 32 F.Supp.2d 894

---

5. Judge Gilmore had ruled that the yield spread premium was not a 'prepaid finance charge' as Plaintiffs had argued, because it was not paid separately in cash or check before or at the consummation of the transaction. A prepaid finance charge requires a separate itemization.

6. RESPA stands for Real Estate Settlement Procedures Act.

7. This provision requires that the TILA disclosure statement reflect the legal obligations between the parties.

(S.D.Miss.1998), decided after Judge Gilmore's July 21, 1997 Order. In *Baldwin,* the plaintiff, an automobile purchaser, alleged a TILA violation based upon a 'secret' or undisclosed agreement between defendants whereby one defendant would pay the other defendant part of the interest charged in the contract as a commission. The court held, *inter alia,* that the plaintiff had failed to state a claim under TILA, since TILA did not require separate itemization of the finance charge:

> The defendants were not required to disclose a dealer discount or the assignment of the loan agreement at less than its face value ... Further, even if a 'dealer discount' were a finance charge, the disclosure need only provide a statement showing the total 'dollar amount the credit will cost you' 12 C.F.R. 226.18;

*Id.* at 904.

■ Based upon the clear language of TILA, Federal Reserve Board Regulation Z, Federal Reserve Board Commentary, and the well-reasoned interpretation of those provisions in the *Baldwin* case, the Court finds that under TILA, a lender is not required to break down the components of the finance charge to disclose the separate existence of the yield spread premium as a component of the finance charge. Indeed, to disclose separately the yield spread premium and/or the other components of the finance charge would violate Federal Reserve Board regulations by presenting the consumer with confusing multiple figures, rather than the required lump-sum finance charge. TILA requires that the finance charge be accurate; Plaintiffs do not contend that any of the finance charges were not accurate. Accordingly, the motions of Defendants FFI and FFG, and Birmingham, Sterling, and Express will be granted as to Plaintiffs' TILA claim.

iii. *Birmingham and Sterling's Knowledge of FFI's Loan Servicing*

Defendants Birmingham and Sterling argue, with respect to ¶ 264 of Plaintiff's Second Amended Complaint, that even if they knew that FFI did not service the loans in accordance with the terms of the loan documents, there is no requirement under TILA or Regulation Z that they prepare the Disclosure Statement in accordance with the manner in which FFI serviced the loans. As noted above, the Court finds that the Disclosure Statement was prepared in accordance with TILA and Regulation Z.

Defendants Birmingham and Sterling further argue that Plaintiffs fail to allege that they (Birmingham and Sterling) had knowledge of the way in which FFI and FFG calculated the interest rate. Plaintiffs rely upon the deposition testimony of William Sumner, Senior Vice President of FFI's Real Estate Underwriting Department:

Q: (By Mr. Steffl) Okay. How do your lenders up here in Michigan know that this language is describing simple interest?

Ms. Ronchetto: Objection to the phrase 'your lenders' but go ahead.

Q: (By Mr. Steffl) Well, I used that I guess as generically as possible. Sterling, for example.

A: We explain when we are setting a lender up how we do business and how we calculate the interest.

Q: Okay. Is that done verbally or in writing?

A: That's verbally.

Q: Is it ever done in writing?

A: I'm not aware of it in writing.

*     *     *     *     *     *

Q: Did you personally describe simple interest to any of the lenders in Michigan?

A: I can't answer that, Jim. If—it's speculation. I just don't remember. It's been a number of years since we did business with lenders.

*     *     *     *     *     *

Q: Was there a policy that simple interest had to be explained to the lenders?

A: I'm not aware of a policy, written policy or anything like that, no.

Sumner Dep. at 160 – 162.

■ The Court finds that Sumner's testimony does not show that Defendants Birmingham and Sterling knew how the interest

rate was calculated. At most, Sumner's testimony on the issue is equivocal and is not sufficient to create a fact issue.

■ Finally, Defendants Birmingham and Sterling assert that this claim is barred by TILA's one year statute of limitations.[8] Specifically, they contend that since the basis for the TILA claim was known by Plaintiffs' counsel when the original complaint was filed in August, 1995, the statute of limitations bars them from proceeding on the TILA claim. Plaintiffs respond that they are not bound by a one year statute of limitations since there was a continuing violation of not having properly disclosed the finance charge and the annual percentage rate. The Court is not persuaded by Plaintiffs' argument. The alleged failure to accurately disclose the interest rate is a distinct moment in time and cannot be said to be continuing. In Judge Gilmore's Opinion and Order, he noted "the limitations period runs from the date on which the borrower discovers or had reasonable opportunity to discover the fraud involving the complained of TILA violation." *Noel*, 971 F.Supp. at 1109 (quoting *Jones v. Trans-Ohio Savings*, 747 F.2d 1037, 1043 (6th Cir. 1984)). Plaintiffs assert that they did not become aware of Birmingham and Sterling's involvement in the interest rate part of the case until after discovery commenced—pointing to the Sumner testimony. As noted above, the Court finds that Sumner's testimony is an insufficient basis for Plaintiffs' claim. Accordingly, Plaintiffs are barred by the statute of limitations from asserting this claim.

### B. *RICO Claims*

Defendants Birmingham, Express and Sterling move for dismissal of Plaintiffs' Fed-

eral RICO claims (Counts 13 – 16). Plaintiffs allege in Counts 13 – 16 that the basis for their RICO claims is that Defendants failed to "disclose to them the yield spread premiums."[9] Defendants argue that since they did not violate TILA, Plaintiffs cannot establish the underlying fraud to support their claims of wire and mail fraud necessary to the RICO claims. The Court agrees and finds that it would be logically inconsistent to hold Defendants liable for Federal fraud/ RICO violations due to their compliance with the requirements of Federal TILA. Therefore, summary judgment is proper with respect to Plaintiffs' RICO claims.[10]

### C. *State Law Claims*

Since the Court finds that dismissal of Plaintiffs' federal claims is proper, the Court will dismiss Plaintiffs' state law claims, as it now lacks an independent basis for jurisdiction over them.

### III. Conclusion

ACCORDINGLY;

The Court GRANTS summary judgment in favor of Defendants on Plaintiffs' TILA and RICO Claims and DISMISSES Plaintiff's remaining state law claims.

The Court DENIES Plaintiff's Motion for Reconsideration of the Court's June 24, 1998 Order.

### *ORDER OF CLARIFICATION REGARDING THIS COURT'S AUGUST 20, 1998 ORDER*

On August 20, 1998, this Court granted summary judgment in the above-captioned case with respect to Plaintiffs' Truth In Lending Act Claim (Count 1) and Racketeering Influenced Corrupt Organization Act

---

8. 15 U.S.C. § 1640(e) provides,

   Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation.

9. Count 13, ¶ 367; Count 14, ¶ 366; Count 15, ¶ 368; Count 16, ¶ 366(sic).

10. The Court notes that although FFI and FFG have not moved for summary judgment on the RICO claims, in granting summary judgment

with respect to Birmingham, Sterling and Express, the Court finds that summary judgment should be granted as to FFI and FFG as well. This is necessary since all of Plaintiffs' RICO claims against FFI and FFG are based upon TILA violations. Insofar as the Court has concluded that summary judgment must be granted on the TILA claims, the same must follow as the RICO claims are based upon TILA violations. Plaintiffs were aware of the vulnerability of the RICO claims based upon the TILA claims by virtue of Birmingham, Sterling and Express' Motion to Dismiss RICO Claims.

Claim (Count 13 – 16) and dismissed Plaintiffs' remaining state law claims. In response to communications from the parties to this case, the Court will now clarify some procedural consequences of that Order.

ACCORDINGLY;

The state law claims of Plaintiffs Sandra Curtis and Molly A. Myers–Berman are DISMISSED WITHOUT PREJUDICE.

The state law claims of Plaintiffs Christopher Noel, Mary Noel, and Leno Jaxon against Birmingham Bancorp Mortgage Corp., Express Mortgage Brokers, Sterling Mortgage & Investment Co. and John Doe Corporations 1–10 are DISMISSED WITHOUT PREJUDICE.

The state law claims of Plaintiffs Christopher Noel, Mary Noel, Leno Jaxon, Frank Nixon, Michael Garza, and Phyllis Garza[1] against Fleet Financial Inc. and Fleet Finance Group are DISMISSED WITH PREJUDICE.

Defendant Fleet Finance, Inc. and Fleet Finance Group's counterclaims against Plaintiffs Christopher Noel, Mary Noel, Leno Jaxon, Michael Garza, Phyllis Garza, and Frank Nixon are DISMISSED WITHOUT PREJUDICE.

The Preliminary Injunction entered in *Garza v. Fleet Finance, Inc.*, Case No. 96–73506 on or about July 19, 1996 is hereby VACATED.

The Ex–Parte Temporary Restraining Order entered in *Nixon v. Fleet Finance, Inc.*, Case No. 96–73706 on or about August 2, 1996 is hereby VACATED.

### ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION

The Court having received Plaintiffs' August 31, 1998 Motion for Reconsideration of its Order of August 20, 1998, and having requested and received responses of the parties Defendant, the Court hereby DENIES Plaintiffs' Motion for Reconsideration because it presents the same issues ruled upon by the Court, and further, Plaintiffs have not demonstrated "a palpable defect by which the Court and the parties have been misled." Local Rule of U.S. District Court for the Eastern District of Michigan 7.1(h)(3).

SO ORDERED.

---

1. These Plaintiffs were dismissed as to Fleet Finance, Inc. and Fleet Financial Group for violating this Court's Order of Payments into Escrow Account.