**Ted HILL, Sr., Individually and on Behalf of all Others Similarly Situated, Plaintiff,**

v.

**GALAXY TELECOM, L.P., d/b/a Galaxy Cablevision, Defendant.**

**No. 1:98CV51–D–D.**

United States District Court, N.D. Mississippi, Eastern Division.

April 16, 2001.

Jon W. (Don) Barrett, Barrett Law Offices, Lexington, MS, Gordon Ball, Knoxville, TN, Michael B. Hyman, Much, Shelist, Freed, Denenberg & Ament, Chicago, IL, Steven A. Martino, Jackson, Taylor & Martino, Mobile, AL, Philip S. Friedman, Ifshin & Friedman, PLLC, Washington, DC, Peter Lubin, Ditommasso & Assoc., Oakbrook, IL, Patrick W. Pendley, Nyle Politz, Patrick W. Pendley, APLC, Plaquemine, LA, for plaintiff.

Charles J. Swayze, Jr., Whittington, Brock, Swayze & Dale, Greenwood, MS, for defendant.

## OPINION

DAVIDSON, Chief Judge.

Ted Hill (Hill), individually and on behalf of all others similarly situated, instituted this class action against Galaxy Telecom, L.P., d/b/a Galaxy Cablevision (Galaxy) for damages allegedly sustained as a result of Galaxy's breach of the implied duty of good faith and fair dealing. Hill maintains that Galaxy's late fee of five dollars is excessive and does not accurately reflect the amount which Galaxy incurs due to late-payers.

This class was certified by order of this court on January 13, 1999. Hill's claims for excessive liquidated damages and unjust enrichment were dismissed by order of this court on March 2, 2000.

The court has jurisdiction of this cause pursuant to 28 U.S.C. § 1332(a)(1). A bench trial on this matter was convened from March 19, 2001, through March 20, 2001.[1]

Having carefully considered the testimony and exhibits presented at trial along with the parties' post-trial submissions, the court finds for the Defendant, Galaxy. Pursuant to *Federal Rule of Civil Procedure* 52(a), the court issues the following

---

1. Hill filed a motion to amend the pre-trial order on March 20, 2001, pursuant to Rule 16(e) of the Federal Rules of Civil Procedure, to include damages. The courts finds the motion to be well-taken and is therefore granted. "[I]n the interest of justice and sound judicial administration, an amendment of a pretrial order should be permitted where no substantial injury will be occasioned to the opposing party, the refusal to allow the amendment might result in injustice to the movant, and the inconvenience to the court is slight." *Sherman v. United States,* 462 F.2d 577, 579 (5th Cir.1972).

findings of fact and conclusions of law.

Findings of Fact

Galaxy, a Delaware limited partnership, was organized in 1995, and provides cable television service to approximately 115,000 customers in fifteen states.[2] Other television services available in the Galaxy service area, including Mississippi, are: 1) Wireless One; 2) Direct TV; and 3) Echo Star.

Hill, class representative, is an adult resident citizen of Prentiss County, Mississippi. He is a self-employed business man with at least two years of college education and is neither uneducated nor disadvantaged. In 1998, Hill entered into a written contract with TeleCommunications, Inc. (TCI) for cable television service. The stated terms of the contract, repeated on the face of each monthly bill, provided that Hill would be assessed a five dollar late fee if he did not pay his cable bill timely. TCI's Policies and Practices, a copy of which was provided to each customer, including Hill, explained the five dollar late fee charge as follows:

> If you do not pay your bill by the due date, you agree to pay us an administrative fee for late payment. The administrative fee is intended to be a reasonable advance estimate of our costs which result from customers' late payments and non-payments. Other fees or charges may also be assessed by your local cable system.
>
> We do not anticipate that you will pay your bill late and the administrative fee is set in advance because it would be difficult to determine the costs associated with any one particular late payment. We do not extend credit to our customers and the administrative fee is not interest, a credit service charge or a finance charge.

In June of 1996, Galaxy acquired ownership of TCI's cable television system in Mississippi, and all subscribers contracts, including Hill's. Galaxy assumed and maintained TCI's Policies and Practices as described in its contracts, including the five dollar late fee charge. Galaxy mailed a copy of its Customer Handbook, which includes its Policies and Practices, and its "How to Read Your Bill" pamphlet to all subscribers, including Hill. Each of these documents alerts customers to pay by the due date to avoid a five dollar late payment fee. Hill continued to be a resident cable customer of Galaxy and received all cable services described in the parties' written contract.

Each Galaxy monthly bill notified customers that a five dollar late fee would be incurred for payments made after the due date of the bill. All customers receive their bill at least fifteen days before the due date. Hill knew and understood the terms of the contract, failed to pay his bill timely on more than one occasion, was assessed the five dollar late fee, and voluntarily paid the five dollar late fee.

When a bill becomes late, Galaxy's billing system generates a report showing accounts that remain past due. Customer service representatives, responsible for outbound calls, begin to contact subscribers to notify them of past due accounts. Ultimately, several contact attempts may be made. If the accounts remain past due, then a "non-pay" work order is generated by the billing system. Dispatch employees review the work orders and assign them to technicians for attempted collection or disconnection. For most customers, the first visit results only in an attempt to collect the past due amount. A second or third unsuccessful attempt to collect usually results in a disconnection. Attempts to col-

---

**2.** Alabama, Colorado, Florida, Georgia, Illinois, Iowa, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Nebraska, South Carolina, South Dakota, and Texas.

lect at the customer's premises may continue through an entire billing cycle before service is disconnected. An average of 24% of Galaxy's subscribers pay their bills late.

Conclusions of law

Breach of the Implied Duty of Good Faith and Fair Dealing

■ In every contract there is an implied duty of good faith and fair dealing. "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Restatement (Second) of Contracts, § 205 (1979). See also, *Cenac v. Murry*, 609 So.2d 1257, 1272 (Miss.1992) (citing *Morris v. Macione*, 546 So.2d 969, 971 (Miss. 1989)); *UHS–Qualicare v. Gulf Coast Comm. Hosp.*, 525 So.2d 746, 757 n. 8 (Miss.1987); *Blue Cross & Blue Shield of Mississippi, Inc. v. Maas*, 516 So.2d 495, 498 (Miss.1987); *Perry v. Sears, Roebuck & Co.*, 508 So.2d 1086 (Miss.1987).

Galaxy's literature, which is given to customers, states that its late fee is a reasonable advance estimate of its costs. The court finds, based on the totality of the evidence, that the five dollar late fee charged by Galaxy is a fair, reasonable, and appropriate charge, and therefore, Galaxy did not breach their duty of good faith and fair dealing to Hill or any class member.

Hill's first expert to testify was John Lehman (Lehman), a certified public accountant. Most of his background is in business consulting and litigation support. Lehman testified that in his opinion, the five dollar late fee bears no relation to the actual costs incurred by Galaxy when a customer fails to pay his/her bill on time. In his opinion, Galaxy incorporates costs which can be attributed to subscribers which never pay their bills, making them non-payers instead of late-payers, and that such cost should not be considered when charging a late-payer a fee. These ex-penses included collection agency costs, bad debt costs, field collection costs, and vehicles. He reasoned that the vehicles dispatched to homes were to disconnect service and not to collect a late bill. These vehicles were operated by Galaxy every month, and that one person paying late does not result in an extra vehicle being bought, or an extra field representative being hired.

Further, Lehman also testified that costs associated with data processing, service representatives, telephones and other infrastructure should not be included when calculating the late fee. These are costs of doing business and Galaxy would employ these people regardless, since they perform other tasks besides collecting past due bills. Again, one person being late on their bill does not result in an extra person being employed. Therefore, these costs should not be considered. Lehman feels that the only costs which are reasonably caused by a subscriber paying late are the direct cost of billing inserts, and the cost of funds for money wrongfully withheld. He feels that the maximum damage on average, caused by a subscriber who pays late is no more than nineteen cents.

In forming his opinion, Lehman reviewed the financial reports from Galaxy, the depositions of Keith Davidson, Galaxy's chief financial officer, and Ronald Payne, Galaxy's comptroller, and the Overland study, conducted in May, 1999. He did not visit any of Galaxy's offices nor talk to any of their personnel.

Hill's second expert to testify was Gerrold Oppenheim (Oppenheim), an attorney with the National Consumer Law Center in Boston, Massachusetts. Most of his experience lies with utility rate issues, including the amount of a late fee charge. He has only limited experience in the cable industry. In his opinion the five dollar late fee which Galaxy charges is grossly

excessive in relation to the costs created by a customer who pays late. He based his opinion, in part, on the public utility industry. Utilities are not permitted to assign the costs of customer service representatives, data processing, collection or bad debt costs to the consumer as late payment fees. Therefore, these costs should not be included in Galaxy's calculation. He reasons that these are costs of doing business and should be included in the base price imposed on all customers.

In Oppenheim's opinion, a reasonable cost would be no more than one to one and a half percent of a subscriber's outstanding bill. The only costs which should be considered is the cost of money caused by the late payment, cost of the notice, and cost of a phone call to collect the bill. The costs related to customer service representatives and field technicians should not be included when calculating the costs incurred by late payers. They are on the payroll regardless. He believes that one particular late payer does not result in the hiring of additional people. That each individual late payer should pay only for those costs which they personally incur and not for the cost the group of late payers incur.

Oppenheim bases these opinions on his review of the Overland study and the depositions of Ronald Payne, Keith Davidson, and Robert Welchlin, Galaxy's expert, including the exhibits to their depositions. He conducted no independent studies, nor did he visit any of Galaxy's offices, or interview their personnel.

Galaxy's expert was Robert Welchlin, a regulatory consultant to the telecommunications, cable, electric and gas industries and a certified public accountant. He is Senior Manager of Overland Consulting. Overland conducted a study at Galaxy's request in May of 1999, of the costs incurred by Galaxy in attempting to collect amounts owed by customers with past due accounts. The study is based on a group of activities and costs which result from the 24% of people who pay their cable bills late.

Specifically, the study covers Galaxy's entire service area for the year ending December 31, 1998, and is based on financial and operating data gathered from Galaxy, as well as on direct observation and evaluation of Galaxy's system operations. The Overland study looks at, among other things, individual operations and selects only those costs that could be avoided if there was no past due accounts. They began by going to Galaxy headquarters and reviewing financial documents. They determined there were two places were most of the customer service activities were conducted; Bonneville, Mississippi and Wickliffe, Kentucky. They went to these two locations and talked to employees. They did a direct analysis of the customer service operations to see what percent of the employees' time was related to collection of past due accounts. They sat down and listened to calls, plus reviewed tapes of calls. Then they multiplied this percentage by the salaries of the customer representatives. Next, they rode with service technicians to see what they do to collect a past due account and did a similar percentage determination. They reviewed the records from the billing system and classified late fees, fees billed, reversed and those that were uncollectible. They considered cost of funds, overhead that could be eliminated if no one paid late, and the cost of outside collection agencies.

It was determined through the Overland study that in 1998, Galaxy assessed a fee of five dollars on cable service accounts not paid by the due date, and collected $1,960,245 in late fees from customers with past due accounts. During the same period, Galaxy incurred $3,431,356 in costs caused by past due accounts and related

collection activities. This averages out to $8.75 per account; or a loss of $3.75 per past due account. Consequently, past due account costs exceeded late payment fees by approximately $1,471,112. When the amount for uncollectible accounts is subtracted, the remaining cost of $6.09 per past due account results. Thus, Galaxy had a loss of over a dollar per past due account in 1998.

The court finds the Overland study to be more through and influential than either Lehman or Oppenheim. Both Lehman and Oppenheim failed to take into consideration that before a subscriber becomes a non-payer, he/she is a late-payer. Further, the court finds that a better analysis is done by considering the late-payers as a group and not just one person. When 24% of the subscribers pay their bills late, there is a large cost associated with collection of those accounts as a group. Although no one person is assigned to exclusive collection activities, more personnel must be hired, more trucks must be purchased and more overhead must be spend to collect these accounts and keep the subscriber.

The court believes Oppenheim's comparison of utility rates and cable rates to be misplaced. Unlike cable, utilities are regulated by the public service commission. Cable companies have competition. To a cable company, keeping the subscriber is a priority. The utility companies, on the other hand, can simply disconnect their services, and a people must pay the bill to have it reconnected. Cable companies are not a necessity of life, and the competition for subscribers is stiff.

Although not within the Galaxy subscriber area, a case with a factual basis almost identical to the instant case has been decided in a state court in Washington. The court found that the $5.00 late fee was not unconscionable, but was a reasonable estimate of the cost incurred by the cable provider (TCI) when a customer fails to pay on time. Thompson v. TCI Cablevision of Washington, Inc., Superior Court of Okanogan County, Washington, No. 94-2-00243-2, decided April 3, 1996.

In determining whether an amount fixed as damages "is so unreasonably large as to be a penalty," two principal factors are considered:

> The first factor is the anticipated or actual loss caused by the breach. The amount fixed is reasonable to the extent it approximates the actual loss that has resulted from the particular breach, even though it may not approximate the loss that might have been anticipated under other possible breaches ... The second factor is the difficulty of proof of loss. The greater the difficulty either of proving that loss has occurred or of establishing its amount with the requisite certainty ... the easier it is to show that the amount fixed is reasonable.

Restatement (Second) of Contracts, § 356(1), comment b.

This issue as it relates to cable television late fees has been addressed in West v. Alabama T.V. Cable, Inc., No. CV-93-193.03, the Circuit Court for Shelby County, Alabama, decided August 29, 1995. The Alabama court found that the $5.00 administrative fee assessed to late paying customers was a reasonable estimate of damages contemplated by the parties' contract and granted the defendant's motion for summary judgment. "[T]he Court finds the Defendants' estimate is a reasonable calculation of sums anticipated to be incurred by the Defendants due to late payments of its customers. The Court notes the difficulty of the Defendants in being able to precisely calculate the expense of having to deal with late payments" West, Order, Page 3.

■ The court finds, based on the evidence before it, that the five dollar late fee

which Galaxy charges its customers is a reasonable estimate of the actual cost incurred by late-payers. Therefore, the court finds that Galaxy has not breached its duty of good faith and fair dealing to Hill or any class member.

■ The court finds further, that Hill's allegations amount to a claim that Galaxy breached their duty in the negotiation of the contract with Hill, i.e. that Hill did not know at the time of contracting with Galaxy what costs Galaxy sought to recoup with the late fee. However, the implied duty of good faith and fair dealing does not extend to the formation of the contract. "The implied covenant of good faith concerns the performance of the contract, not the negotiation of terms leading to the agreement". *Baldwin v. Laurel Ford Lincoln–Mercury, Inc.*, 32 F.Supp.2d 894, 899, (S.D.Miss.1998) (citing Restatement (Second) of Contracts § 205 cmt. c. (1981)); see also, *Henkin v. Skane–Gripen A.B.*, 986 F.2d 1424 (Table), 1993 WL 36870 (7th Cir.(Ind.), Feb 12, 1993) (NO. 91–3338) (granting summary judgment for defendants where allegation that defendants breached duty of good faith and fair dealing were based only on negotiation process). Hence, since Hill's claims involve the negotiation of the contract, rather than the performance, the implied duty of good faith and fair dealing does not apply, and therefore could not be breached.

The court finds, based on the above mentioned authority, that Hill's claim for breach of the implied duty of good faith and fair dealing must fail.

A separate judgment in accordance with this opinion shall issue this day.

### ORDER

After a bench trial and pursuant to an opinion issued this day, the court rules that

- judgment is hereby rendered in favor of the Defendant, Galaxy Telecom, L.P., d/b/a Galaxy Cablevision and against Ted Hill, Sr., Individually and on behalf of all others similarly situated;

- the Plaintiff's motion to amend the pre-trial order to include damages (docket entry #120) is GRANTED;

- the Defendant's *ore tenus* motion to exclude all testimony regarding damages is DENIED as MOOT; and

- this case is CLOSED.